**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:<br><br>BEVERLY GILBERT,<br><br>DEBTOR. | § § § § § § § § | CASE NO: 16-12120<br><br>CHAPTER 13<br><br>SECTION A |
| IN RE:<br><br>WOODROW HAYDEN & NADRINE PATRICE HAYDEN,<br><br>DEBTORS. | § § § § § § § § | CASE NO: 17-10402<br><br>CHAPTER 13<br><br>SECTION A |
| IN RE:<br><br>ANDREA TYLER LUCAS,<br><br>DEBTOR. | § § § § § § § § | CASE NO: 19-11446<br><br>CHAPTER 13<br><br>SECTION A |
| IN RE:<br><br>TONJA MASION BREAUX,<br><br>DEBTOR. | § § § § § § § § | CASE NO: 19-11993<br><br>CHAPTER 13<br><br>SECTION A |

**ORDER AND REASONS**

Before the Court are several motions to dismiss each the above-captioned cases filed by the Chapter 13 Trustee (the "Trustee") and/or Debtors' motions to modify their plans pursuant to the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 11 U.S.C. § 1329(d)), to which the Trustee objects. *See* No. 16-12120, ECF Docs. 91 & 94; No. 17-10402, ECF Docs. 93, 94, 95 & 100; No. 19-11446, ECF Docs. 79, 96 & 110; 19-11993, ECF Docs. 43, 44, 45, 49 & 51. In each of these cases but for the

*Hayden* case, the Debtor alleges that he or she fell behind in payments owed under the confirmed plan due to an unforeseen hardship and seeks to become current on those arrearages by extending the terms of the confirmed plan past sixty months pursuant to the CARES Act. The CARES Act allows such modification of a plan if it were confirmed before March 27, 2020, and if "[t]he debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic." 11 U.S.C. § 1329(d)(1). In the *Hayden* case, the Debtors allege that they became delinquent due to an unforeseen hardship and wish to modify the confirmed plan under the CARES Act by decreasing the recovery to unsecured creditors, but still plan to complete their case within sixty months.

In each of these cases, the Debtor confirmed his or her plan prior to March 27, 2020; however, the Debtor fell behind in plan payments in the months *before* the enactment of the CARES Act and alleges to have fallen further behind and become unable to catch up as a direct or indirect result of the pandemic. The Trustee objects to modification of confirmed plans under the CARES Act unless the Debtors fell behind after March 27, 2020, and the *sole* reason for the arrearages can be traced to the pandemic. For the reasons that follow, this Court finds that the CARES Act allows modification of a confirmed plan if a debtor is experiencing or has experienced a material financial hardship due to the coronavirus pandemic, regardless of whether the debtor was current in his or her payments prior to the pandemic or whether the material financial hardship is solely caused by the pandemic.

**JURISDICTION AND VENUE**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may

hear and determine on a final basis under 28 U.S.C. § 157(b). The venue of the Debtors' chapter 13 cases is proper under 28 U.S.C. § 1408.

## DISCUSSION

"Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.*, was created 'to address consumer credit loss during the Great Depression by providing a completely voluntary proceeding for consumers to amortize their debts out of future earnings.'" *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006) (quoting *In re Nolan*, 232 F.3d 528, 530 (6th Cir. 2000)). Under the current chapter 13 consumer bankruptcy regime, a wage-earning debtor is required to make monthly payments of his or her projected disposable income over a term of no longer than sixty months pursuant to a written plan confirmed by the Court. *See* 11 U.S.C. §§ 1321, 1322 & 1325. "Projected disposable income," as that term is used in § 1325(b), is not defined in the Bankruptcy Code, but "[a]s currently developed, projected disposable income is accepted as a forward looking requirement based on a six-month historical average of a debtor's income." David R. Jones, *Savings: The Missing Element in Chapter 13 Bankruptcy Cases?*, 26 AM. BANKR. INST. L. REV. 243, 252 (2018) [hereinafter Jones, *Savings*] (citation omitted). A debtor's projected disposable income defines "the pot" available for payment under a plan; that is, projected disposable income "refer[s] to the amount the Code requires the debtor to pay out over the term of a plan." *In re King*, 460 B.R. 708, 711 n.11 (Bankr. N.D. Tex. 2011).

Upon completion of the plan, a debtor may receive a discharge of debt, with certain exceptions, including, for example, long-term secured debts that continue after the plan is concluded. *See* 11 U.S.C. § 1328. But "[s]tudy after study . . . has found that only about one-third of consumers who enter chapter 13 complete their repayment plans and therefore receive a discharge of remaining unsecured debts." Sara S. Greene, Parina Patel & Katherine Porter,

3

*Cracking the Code: An Empirical Analysis of Consumer Bankruptcy Outcomes*, 101 MINN. L. REV. 1031, 1032 (2017). "Inherent in the 'projected disposable income approach implemented under [the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005] is the premise that debtors live in a static financial environment for the entirety of a five-year plan." Jones, *Savings*, at 245. That premise ignores the reality of living: unplanned drops in income due to sickness, accidents, or temporary reductions-in-force and unplanned expenses for car and home repairs, weather events, and medical bills. *Id.* In making an argument for allowing a savings component in chapter 13 to smooth the bumps in a debtor's payment plan caused by unforeseen events, Chief Judge Jones of the United States Bankruptcy Court for the Southern District of Texas observes:

> The current structure under BAPCPA leaves the individual chapter 13 debtor in the position of being able to succeed in a chapter 13 plan only if (i) the debtor's income is steady or rising; and (ii) the debtor encounters no significant unanticipated financial events during the plan term; or worse, the debtor creates a cushion by ignoring the oath attached to the official forms and inappropriately manipulates monthly expense numbers.

Jones, *Savings*, at 252.

The Bankruptcy Code, however, offers one tool to assist debtors in coping with unanticipated financial events: modification of a confirmed plan under § 1329.[1] "Modification is

---

[1] This Court acknowledges that modification under § 1329 does not address the larger systemic issues associated with chapter 13 that the savings plan proposed by Chief Judge Jones attempts to confront. A § 1329 modification undoubtedly is a way to keep debtors in the game, so to speak, and help them continue to make plan payments—not an insignificant endeavor, considering that only the completion of a bankruptcy plan will ensure that a debtor can restructure its debt with a secured lender and maintain possession of her home or car. But modification under § 1329 has its limits, as a debtor's plan cannot exceed sixty months. *See* 11 U.S.C. § 1322(d)(1). If an unexpected event occurs late in the life of the debtor's plan, the debtor may be without recourse. Even when only applied to below-median debtors, implementation of savings plans in chapter 13—if it led to a marked increase in the success of consumer bankruptcies—could have a significant financial impact on creditors and markets, *see* Jones, *Savings*, at 256 n.15, as well as begin to address broader issues of consumer financial management competency.

based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006). Under § 1329,

> [a] plan may be modified to: (1) increase or reduce *plan payments* on a particular claim; (2) extend or reduce the *time* for plan payments; (3) alter the distribution to a creditor under the plan to account for nonplan payments made to that creditor; or (4) reduce the amount to be paid under the plan by the amount the debtor pays to purchase health care insurance (subject to certain provisos and exceptions).

*In re Smith*, 600 B.R. 570, 576 (Bankr. S.D. Tex. 2019) (summarizing § 1329(a)(1)–(4)).[2] In 2006, joining the First and Seventh Circuits, the Fifth Circuit clarified its stance on § 1329 modifications, holding that debtors are not required to prove an unanticipated, substantial change in circumstances in order to take advantage of the Bankruptcy Code's modification provision. *See In re Meza*, 467 F.3d at 877–88.

In declining to impose a requirement on a debtor to show a hardship or substantial change to modify a confirmed plan, the Fifth Circuit and other courts inside and outside this circuit looked to the plain language of § 1329. *See In re Meza*, 467 F.3d at 877 (citing *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994) ("By its terms, § 1329 does not provide for any threshold requirement to

---

[2] A plan modified under § 1329(a) must still satisfy § 1329(b):

> Section 1329(b) applies four key provisions governing plan confirmation to plan modification: sections 1322(a), 1322(b), 1323(c), and 1325(a). Section 1322 governs the contents of a plan. For example, section 1322(b) provides that a Chapter 13 plan may modify the rights of the holders of certain secured claims as well as provide "for the payment of all or part of claim against the debtor from property of the estate or property of the debtor." *See* 11 U.S.C. § 1322(b)(2), 1322(b)(8). Section 1325 sets forth the requirements for confirming a plan, including the treatment of secured claims and the requirement that the plan "has been proposed in good faith." 11 U.S.C. § 1325(a)(3), 1325(a)(5). Any proposed modification of a confirmed plan must satisfy each of the confirmation requirements of section 1325(a). Finally, section 1323(c) acknowledges that a plan modification may alter the treatment of a secured creditor. *See, e.g.*, 11 U.S.C. § 1323(c).

*In re Sellers*, 409 B.R. 820, 824 (Bankr. W.D. La. 2009).

modify a bankruptcy plan."); *In re Sutton*, 303 B.R. 510, 516 (Bankr. S.D. Ala. 2003) (citing *Witkowski* for the proposition that § 1329's plain language imposes no substantial change requirement); *In re Phelps*, 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993) ("Congress specifically provided for a change in circumstances test under other provisions of the Bankruptcy Code, including at least one in Chapter 13.")). Indeed, "[i]f Congress meant for a 'change in circumstances' standard to be applied, it would have included language to that effect in the modification provision of § 1329." *In re Anderson*, 545 B.R. 174, 177 (Bankr. N.D. Miss. 2015).

Which brings us to the CARES Act. On March 27, 2020, Congress enacted the CARES Act to curb the impact of COVID-19 on the economy. Section 1113(b)(1)(C) of the CARES Act specifically amends § 1329 by adding the following provision:

> (d)(1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of this subsection, the plan may be modified upon the request of the debtor if—
>
>> (A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; and
>>
>> (B) the modification is approved after notice and a hearing.
>
> (2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.
>
> (3) Section 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).

134 Stat. 312 (codified at 11 U.S.C. § 1329(d)). The new statute applies to cases confirmed before its enactment date of March 27, 2020, and, unlike the language in § 1329(a), the plain language of § 1329(d) imposes upon the debtor the requirement to show "a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic." *Id*. The question before this Court, however, is whether the statutory language of the CARES Act requires debtors

to have been current in their plan payments as of March 27, 2020, as a prerequisite to obtaining a plan modification under this subsection.

The Fifth Circuit instructs this Court to start with the language of the statute to interpret its meaning. *See In re Nowlin*, 576 F.3d 258, 261 (5th Cir. 2009). "When the language is plain, we must enforce the statute's plain meaning, unless absurd." *Id*. at 261–62 (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)). "[S]tatutory language must be read in context [since] a phrase gathers meaning from the words around it." *Id*. (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Indeed, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. (quoting *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997)).

The CARES Act, as codified in § 1329(d), contains two requirements to obtain a plan modification: (1) a debtor's plan must have been confirmed by March 27, 2020, and (2) a debtor must be "experiencing or has experienced a material financial hardship due, directly or indirectly to" COVID-19. 11 U.S.C. § 1329(d). The Trustee would have this Court impose a third requirement on debtors: to have been current in their plan payments prior to March 27, 2020. But nothing in the text of § 1329(d) indicates congressional intent to impose that requirement.

All of the Debtors here fell behind in their plan payments prior to March 27, 2020, and had "an absolute right to request modification of the plan between confirmation of the plan and completion of the plan payments" under § 1329(a). *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994). They would not have been required to show a change in circumstances to receive a modification under § 1329(a) and, if the proposed modification met the requisites in § 1329(b), the modification would have been granted after notice and hearing. And then the pandemic hit. Albeit a low bar, § 1329(d)(1) now imposes on those Debtors the requisite to show a material

financial hardship due directly or indirectly to the pandemic, and the § 1329(b) requirements for any proposed modification remain. *Compare* 11 U.S.C. § 1329(b)(1), *with* 11 U.S.C. § 1329(d)(3). But nothing in the text of the CARES Act forecloses the relief available under § 1329(d) to those Debtors simply because they were behind in plan payments prior to March 27, 2020. Congress is very capable of limiting and conditioning the relief it fashions. Looking at § 1329 on the whole and finding that the plain text of § 1329(d) is unambiguous, this Court declines to overlay the requirement that debtors be current in their plan payments prior to March 27, 2020, in order to be eligible to modify their plans under the CARES Act.

## CONCLUSION

Based on the foregoing, and including the pleadings and the representations of the parties at the hearings in each of these matters on August 26, 2020, this Court finds that each Debtor in the above-captioned cases has shown that he or she is experiencing or has experienced a material financial hardship due directly or indirectly to COVID-19.

Should the Trustee have other objections related to whether any of the Debtors' proposed modifications meet the requirements of §§ 1329(b) & (d)(3), he must file those into the record no later than October 19, 2020. If any such objections are filed, this Court will consider those objections on October 28, 2020, at 1:30 p.m. Otherwise, on October 20, 2020, for the reasons discussed herein, this Court will enter orders (1) GRANTING the *Second Motion To Modify Plan Payments* filed by Beverly Gilbert, [No. 16-12120, ECF Doc. 91]; (2) DENYING the Trustee's motion to dismiss, [No. 17-10402, ECF Doc. 93], and GRANTING the *Motion To Suspend and Modify Chapter 13 Plan* filed by Woodrow and Nadrine Hayden, [No. 17-10402, ECF Doc. 95]; (3) DENYING the Trustee's motion to dismiss, [No. 19-11446, ECF Doc. 79], and GRANTING the *Motion To Modify Chapter 13 Plan* filed by Andrea Lucas, [No. 19-11446, ECF Doc. 96]; and

(4) DENYING the Trustee's motion to dismiss, [No. 19-11993, ECF Doc. 43], and GRANTING the *Motion To Modify Chapter 13 Plan Post-Confirmation* filed by Tonja Masion Breaux, [No. 19-11993, ECF Doc. 45].

New Orleans, Louisiana, October 5, 2020.

                            MEREDITH S. GRABILL
                        UNITED STATES BANKRUPTCY JUDGE